IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SEAN IRA NESBITT,

     Plaintiff,

v.                                Case No. 3:22cv5435/LAC/ZCB

LT. DANIO, et al.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case brought under 42 U.S.C. § 1983. Plaintiff has sued three correctional officers with the Florida Department of Corrections ("FDOC"). Plaintiff alleges that Defendants violated the Eighth Amendment when they used excessive force against him. (Doc. 17 at 8). Defendants have moved for summary judgment. (Doc. 37). Plaintiff has not responded in opposition, despite being provided an opportunity.[1] (*See* Doc. 38). For the reasons below, Defendants' motion for summary judgment should be denied.

---

[1] Plaintiff's failure to respond in opposition does not provide the Court with a basis for granting summary judgment by default. *Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Emps. v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004). According to the Eleventh Circuit, a "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *Id.*

# I.    Background

Plaintiff is an inmate at the Santa Rosa Correctional Institution.  He has sued

Defendants under 42 U.S.C. § 1983 for excessive force, in violation of the Eighth

Amendment.  The lawsuit arises out of an incident that occurred on July 1, 2021,

while Plaintiff was incarcerated at the Okaloosa Correctional Institution ("OCI").

(Doc. 17 at 5-7).  The parties tell different stories about what actually happened on

July 1, 2021.

## A.    Plaintiff's version of events

In his verified complaint,[2] Plaintiff contends that Defendants "beat [him]

while he was in handcuffs, waist chain[s], and leg shackles [and that] [a]s a result of

---

[2] Defendants contend that summary judgment is warranted because Plaintiff made
no discovery requests, discovery has ended, and, as a result, Plaintiff has provided
no evidence to prove his case.  (Doc. 37 at 3, 4-5).  While Defendants are correct
that summary judgment is appropriate where no evidence supports the non-moving
party's case, a *pro se* plaintiff's verified complaint is considered evidence for
summary judgment purposes.  And pursuant to 28 U.S.C. § 1746, Plaintiff has
declared under penalty of perjury that the facts in the complaint are true.  (Doc. 17
at 14).  Thus, Plaintiff's verified complaint constitutes evidence the Court must
consider for purposes of determining if summary judgment should be granted.
Defendants' argument to the contrary lacks merits.  *See Sears v. Roberts*, 922 F.3d
1199, 1208-09 (11th Cir. 2019) (finding that prisoner's sworn statements made in
complaint and affidavit were sufficient to create genuine issue of material fact
regarding excessive force claim); *see also Walker v. Poveda*, 735 F. App'x 690 (11th
Cir. 2018) (per curiam) (reversing summary judgment where the district court failed
to consider *pro se* plaintiff's verified complaint as evidence); *Caldwell v. Warden,
FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) ("We . . . credit the 'specific
facts' pled in [the plaintiff's] sworn complaint when considering his opposition to
summary judgment.") (citations omitted); *Pretka v. Kolter City Plaza II, Inc.*, 608
F.3d 744, 749 n.5 (11th Cir. 2010) ("A sworn declaration is legally the same as an

the attack, [he] was seriously injured." (Doc. 17 at 5).  Specifically, Plaintiff alleges

that on July 1, 2021, Defendant Roberts came to Plaintiff's prison dormitory, awoke

Plaintiff out of his sleep, and ordered Plaintiff to "come and follow me." (*Id.*).  As

directed, Plaintiff followed Defendant Roberts to the captain's office where

Defendant Danio placed Plaintiff in handcuffs, waist chains, and leg shackles. (*Id.*).

Defendant Danio then accused Plaintiff of "disrespecting a female officer by

exposing himself to her." (*Id.*).

Plaintiff denied Defendant Danio's accusation.  (*Id.*).  Plaintiff's denial

enraged Defendant Danio, so Defendant Danio grabbed Plaintiff by the head and

pushed his forehead into a glass window, causing the glass to shatter.  (*Id.* at 5-6).

Defendant Danio then slammed Plaintiff onto the concrete floor.  (*Id.* at 6).  As

Plaintiff lay sprawled on the floor fully restrained, Defendant Danio grabbed

Plaintiff's right wrist and bent it backwards, saying, "Get the f*** up." (*Id.*).  As

Plaintiff stood to his feet, Defendant Spaziante slammed Plaintiff to the floor "for

no reason at all." (*Id.*).

Next, Defendants Danio, Spaziante, and Roberts "began punching and kicking

[Plaintiff] in the head, face, ribs, legs, and other parts of his body while he was in

---

affidavit.") (citing 28 U.S.C. § 1746)); *United States v. Stein*, 881 F.3d 853, 858-59
(11th Cir. 2018) (explaining that a sworn affidavit "can create a genuine dispute
concerning an issue of material fact, even if it is self-serving and/or
uncorroborated").

handcuffs, waist chains, leg shackles, and [while Plaintiff] was not disobeying any verbal orders nor resisting nor struggling." (*Id.*). As Plaintiff "screamed psychological emergency," Defendants continued to beat him. (*Id.*). "Once the force ceased, Sergeant Roberts stuck his finger into [Plaintiff's] left eye" and "tried to pull [Plaintiff's] left eye ball out which caused [] severe pain." (*Id.*). Defendant Roberts then "placed his foot against [Plaintiff's] neck." (*Id.*). "[Plaintiff] was eventually placed in a van and transported to the Okaloosa Main Unit where he was denied medical attention." (*Id.*).

As a result of Defendants' unprovoked attack, Plaintiff says he suffered swelling and a permanent knot on his forehead, a black swollen left eye, upper lip laceration, permanent knot to his left rib cage, and injuries to his right shoulder, right ankle, right wrist, and back. (*Id.*). Plaintiff says he also suffered a chipped front tooth and has "blurry vision" because of the incident. (*Id.*). According to Plaintiff, he has "suffered from emotional distress and terrifying 'flashbacks' and 'nightmares' from the physical abuse defendants subjected him to." (*Id*. at 7).

For relief, Plaintiff also seeks compensatory, punitive, and nominal damages in unspecified amounts against Defendants in their individual capacities. (*Id*. at 2-3, 8). He also seeks a declaration that Defendants violated his rights. (*Id*. at 8).

### B.   Defendants' version of events

Defendants tell a different story about what happened on July 1, 2021.  Their

version of events is taken from ten unsigned FDOC documents they have attached

to their motion for summary judgment.  (Docs. 37-2 to 37-11).[3]   According to

Defendants, at approximately 5:26 a.m. on July 1, 2021, Defendants sought to place

Plaintiff in full restraints so they could transport him to "administrative confinement

due to a prior rule infraction."  (Lt. Danio, Use of Force Incident Report (Jul. 1,

2021), Doc. 37-8 at 1).  Defendant Danio first directed Plaintiff "to kneel down so

leg restraints could be applied," and Plaintiff complied.  (*Id*.).  After the first restraint

was applied, Plaintiff "stood up, refusing all orders to remain kneeling."  (*Id*.).

Plaintiff then called a "psych emergency" and said, "'I'm going to kill myself.  I'm

going to smash my head against this window' after which he headbutted the window

to the OIC office door."  (*Id*.).  Defendant Danio pulled Plaintiff away from the door

---

[3] The FDOC documents include three Disciplinary Report Worksheets dated July 1, 2021, citing Plaintiff for (1) resisting Defendant Danio's orders to submit to restraints (Doc. 37-2); (2) attempting to bite Defendant Roberts in the arm (Doc. 37-3); and (3) kicking Defendant Spaziante in the lower abdomen (Doc. 37-4).  Also submitted are two additional Disciplinary Report Worksheets dated July 2, 2021, citing Plaintiff for (1) refusing to submit to a posterior/anterior post-use-of force medical evaluation (Doc. 37-5); and (2) refusing to clean the feces from his cell window as ordered (Doc. 37-6).  Finally, Defendants submitted five Use of Force Incident Reports dated July 1, 2021—three of which are authored by Defendants, one  by Defendants' supervisor, and one by an FDOC officer witness who is not a defendant in this case.  (*See* Docs. 37-7 to 37-11).

and "relinquished [his] custodial hold on [Plaintiff] to Officer Roberts."  (*Id.*).

Plaintiff then "attempted to bite Officer Roberts."  (*Id.*).  In response, "Officer

Roberts utilized physical force to place [Plaintiff] in a chest down prone position on

the floor."  (*Id.*).  Once on the floor, Plaintiff continued "kicking his legs and

headbutting the floor."  (*Id.*).

As Defendants Roberts and Spaziante used physical force to pin Plaintiff to

the ground, Sgt. Harrell (not a defendant) restrained Plaintiff's hands and Defendant

Danio applied leg restraints.  (*Id*. at 2).  Plaintiff, while restrained and still resisting,

was escorted to the sally port and ordered "to stand to his feet and walk," but he did

not comply.  (*Id.*).  Defendant Danio then applied pressure to Plaintiff's wrists to

attempt compliance, but Plaintiff continued to resist.  (*Id.*; *see also* Sgt. Roberts, Use

of Force Incident Report (Jul. 1, 2021), Doc. 37-10 at 2).  Defendants then resorted

to a "four-man carry" to transport Plaintiff "face up" to the Main Unit.  (Doc. 37-8

at 2).  During the carry, Plaintiff "gained hold of" Defendant Roberts' "class B shirt

sleeve with his teeth," and Defendant Roberts ordered Plaintiff to "stop biting."

(Doc. 37-10 at 2).  At that time, Defendant Danio "heard a sound consistent with

cloth being pulled out of someone's teeth [as] Officer Roberts gave a loud verbal

command for [Plaintiff] to stop biting."  (Doc. 37-8 at 2).  Defendant Danio

subsequently reviewed the "fixed wing camera" footage of the four-man carry,

which captured Plaintiff's kicking Defendant Spaziante in the lower abdomen. (Doc. 37-4).

Once inside the transport van, Plaintiff began to "kick the van door while yelling obscenities." (Doc. 37-8 at 2). Upon arrival at E Dormitory, Plaintiff "continued his disorderly behavior by yelling, stopped walking, braced himself and repeatedly pulled away from [officers'] custodial hold." (*Id*.). Because of Plaintiff's continued resistance, another four-man carry was used to transport Plaintiff to his cell. (*Id*.). As they entered the cell, Defendants forced Plaintiff to the floor using a plexiglass shield so they could remove his restraints. (*Id*.).

A prison nurse then attempted to conduct a post use-of-force examination on Plaintiff from outside his cell door. (*Id*.). Plaintiff refused to cooperate so that an accurate evaluation could be undertaken. (*Id*.). But, according to Defendant Danio, no physical injuries were noted. (*Id*.). The shift supervisor, however, stated that a minor injury was noted at the time which was limited to a "scratch on [Plaintiff's] third knuckle, R. hand." (*Id.* at 1, cmt.). Further, the shift supervisor confirmed that "[a]n anterior and posterior view sequence of [Plaintiff] was not captured on handheld video due to [Plaintiff's] non-compliant actions." (*Id*.). The shift supervisor also stated that during the incident Plaintiff stated that he had a psychological emergency. Following the conclusion of the video recording,

"[Plaintiff] was assessed by Mental Health Specialist Felix who deemed that [Plaintiff] required further evaluation." (Doc. 37-8 at 1, cmt.).

## II.   Discussion

### A.   The summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. When deciding whether to grant summary judgment, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-movant." *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988); Fed. R. Civ. P. 56(c)(1)(A).

The central summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When answering that question, courts must view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And the

nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). At the summary judgment stage, the judge is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

While *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show leniency to *pro se* litigants, [they] will not serve as de facto counsel, or rewrite an otherwise deficient pleading in order to sustain an action." *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (per curiam) (cleaned up).

   **B.      There are genuine issues of material fact in this case.**

Plaintiff alleges that Defendants used excessive force by physically assaulting him without adequate provocation while he was fully restrained. Defendants denying doing this and claim summary judgment is warranted. Because there are genuine issue of material fact regarding whether Defendants used excessive force, summary judgment should be denied.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment if they apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Excessive force claims contain both an objective and subjective component. *DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021). The subjective component focuses on whether "the force used was sadistically and maliciously applied for the very purpose of causing harm." *Id*. (cleaned up). And the "objective component looks to whether the officer's actions were harmful enough or sufficiently serious." *Id*. The objective component reflects the principle that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (cleaned up).

With regard to the subjective prong, to determine whether force was applied sadistically and maliciously to cause harm courts apply the following factors: "[1] the need for the application of force, [2] the relationship between that need and the amount of force used, [3] the threat reasonably perceived by the responsible officials, and [4] any efforts made to temper the severity of a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Through the consideration of these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it will occur." *Id*. at 1300-01 (cleaned up).

10

When those factors are applied here, it is evident that there are genuine issues of material fact that preclude summary judgment.  In his verified complaint, Plaintiff alleges that the use force was unprovoked and unnecessary.  He claims that he was compliant and not resisting.  Plaintiff alleges that he was slammed against a window with such force that the window shattered.  (Doc. 17 at 6).  He also says that Defendants punched and kicked him in the head, face, and other parts of his body while he was restrained in handcuffs and leg shackles.  (*Id.*).  Plaintiff further alleges that Defendant Roberts stuck his finger in Plaintiff's eye and stepped on his neck when he was laying on the ground.  (*Id.*).  According to Plaintiff, he was not resisting or disobeying commands at the time Defendants used this force against him.  (*Id.*).  Plaintiff alleges that he suffered physical injuries as a result of Defendants' use of force against him.  More specifically, Plaintiff claims to have suffered a lacerated lip, a permanent knot to his forehead and left rib cage, a chipped front tooth, a black swollen eye, and blurred vision.[4]

---

[4] Although these injuries are not life-threatening or life-altering, such severity of injury is not required for an excessive force claim. *See Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (stating that an excessive force claim did not require plaintiff to "have suffered lasting physical injury").  "As the Supreme Court has explained, 'an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape serious injury.'" *Williams v. Radford*, 64 F.4th 1185, 1197 (11th Cir. 2023) (quoting *Wilkins*, 559 U.S. at 38) (cleaned up).  Additionally, Plaintiff's alleged injuries are more than *de minimis*. *See Hudson*, 503 U.S. at 10 (finding that "bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* injuries for Eighth Amendment purposes.").

For their part, Defendants say that Plaintiff was refusing to obey commands and being disruptive, which rendered the use of force necessary. They claim Plaintiff was pulling away, biting, and kicking throughout the incident. And Defendants deny using more force than was necessary to gain Plaintiff's compliance. According to Defendants, the use of force was reactionary and required to maintain control of Plaintiff.

The Court has not been provided with video evidence of the incident. Thus, what the Court is left with is Plaintiff's sworn allegations on the one hand and Defendants' statements in the use of force and disciplinary reports on the other. Plaintiff says the incident unfolded in one way, and Defendants say it unfolded in an entirely different way. At summary judgment, it would be inappropriate for the Court to determine who is telling the truth about what happened. "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson,* 477 U.S. at 255. That is true even if the Court "believes that the evidence presented by one side is of doubtful veracity" because "it is not proper to

grant summary judgment on the basis of credibility choices." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006) (citation omitted).

Additionally, the Eleventh Circuit has made clear that "officers' documentary evidence consist[ing] mainly of various forms of their own testimony" does not overcome a prisoner's verified complaint that directly contradicts the officers' version of events at summary judgment. *Sears*, 922 F.3d at 1208-09. Although Defendants have submitted multiple reports from various officers, "[t]he question on summary judgment is not about which side has offered the most evidence." *Id.* at 1207. Instead, the question is whether there is a genuine dispute of material fact such that the case requires submission to a jury. Here, there are genuine disputes of material fact.

More particularly, there are disputes about what precipitated Defendants' use of force. There are disputes about how much force and what type of force was used. There are disputes about Plaintiff's compliance with commands prior to and during the use of force. Those disputes are about material facts, as opposed to minor or trivial details. Viewing the evidence in the light most favorable to Plaintiff, Defendants unnecessarily and repeatedly struck him (while he was restrained) without provocation. And the strikes caused him injuries. If things happened as Plaintiff says they did, then a reasonable jury could find that the amount of force used was excessive in violation of the Eighth Amendment.

It is important to note that the Court has not been provided with video footage of the incident.  There is nothing in the record, therefore, that so blatantly contradicts Plaintiff's version of events that no reasonable jury could be expected to believe it. *See Sears,* 922 F.3d at 1208-09 (finding that summary judgment could not be granted in favor of corrections officers when there were no video recordings and the evidence in the record consisted of statements from the defendants and contradictory statements by the plaintiff).  Accordingly, Defendants are not entitled to summary judgment.

### III.    Conclusion

For the reasons above, the undersigned respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment, (Doc. 37), be **DENIED**.

At Pensacola, Florida this 31st day of July 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

15

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control**.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.